UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:08CV-00019-JHM

DAVID R. CUMMINS, Conservator
for CAP, a Minor                                                                   PLAINTIFF


VS.


BIC USA, INC., WAL-MART STORES, INC.
and MCDONALD'S CORPORATION                                        DEFENDANTS


## ORDER

Before the Court is Plaintiff's motion to quash subpoena and for entry of protective

order (DN 40).  At issue is the deposition subpoena that Defendant, BIC USA, Inc. ("BIC"), served

on co-counsel to Plaintiff, attorney Jeffrey L. Eastham ("Mr. Eastham") (DN 40, Exhibit 2).

Responses have been filed by BIC (DN 42), Defendant, Wal-Mart Stores, Inc. ("Wal-Mart") (DN

44), but not Defendant, McDonald's Corporation ("McDonald's").  Plaintiff has filed a reply (DN

45), BIC has filed a surreply (DN 49) and Plaintiff has filed a response (DN 47).  This matter is ripe

for determination.

By way of background, Plaintiff on behalf of CAP, a minor child, has filed this action

against BIC, Wal-Mart and McDonald's on various theories of liability (DN 1).  On December 17,

2004, three-year old CAP was dropped off at his mother's apartment by his step-mother, Tammy

Polley ("Ms. Polley"), and he immediately went upstairs to his bedroom (DN 41).  A short while

later, CAP's mother, Amy Cowles ("Ms. Cowles"), heard CAP scream and found him at the top of

the stairs engulfed in flames from the waist up (DN 41).  Plaintiff alleges CAP sustained serious

burn injuries while playing with a BIC lighter that had the child-resistant guard removed (DN 1, 41).

Plaintiff further alleges when the lighter ignited the "McKids" brand shirt, purchased from

Wal-Mart, it burst into flames and consumed the upper portion of CAP's body (DN 1).   The

child-resistant guard on the lighter is the metal band that a consumer must depress before rotating

the spark wheel in order to generate a flame (DN 41).   Apparently, no one seems to know where the

lighter came from (DN 41).

Plaintiff does not know why BIC is seeking to take Mr. Eastham's deposition (DN

40).  Nevertheless, he argues his motion should be granted because BIC cannot satisfy the three-part

test in Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 628 (6th Cir. 2002) (citing Shelton

v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986)) that applies when a party seeks to take

the deposition of an opposing counsel (DN 40).  Plaintiff contends a protective order is appropriate

because BIC will probably seek information that is subject to the attorney-client privilege or

protected from discovery under the work-product doctrine (DN 40).

In response, BIC argues the Court should deny the motion because of what it intends

to explore during the deposition (DN 42).[1]  First, it seeks to question Mr. Eastham about an

investigation he may have conducted, in his capacity as the County Attorney for Green County,

Kentucky, after receiving a notice of potential child neglect and/or abuse from the Cabinet for

Families and Children, Department of Community Based Services (the "Cabinet") (DN 42).  BIC

believes in his capacity as Green County Attorney, Mr. Eastham conducted an investigation to

determine whether the fire involving CAP warranted criminal charges against CAP's parent and/or

guardians (DN 42).  BIC asserts the investigation was conducted before Mr. Eastham was retained

---

[1]Defendant, Wal-Mart Stores, Inc. ("Wal-mart"), adopts BIC's arguments in its objection
to the motion (DN 44).

as co-counsel to Plaintiff (DN 42).  Citing <u>Pamida, Inc. v. E.S. Originals, Inc.</u>, 281 F.3d 726, 730 (8th Cir. 2002), BIC contends the three-part test in <u>Nationwide Mut. Ins. Co.</u>, does not apply because it seeks to depose Mr. Eastham with respect to the investigation he conducted in his capacity as County Attorney during related proceedings that have long since concluded (DN 42).  Further, BIC asserts the information Mr. Eastham procured in his role as County Attorney is not subject to the attorney-client privilege or the work-product doctrine (DN 44).

Additionally, BIC seeks to question Mr. Eastham about the substance of a telephone conversation with Ms. Polley (DN 42).  The telephone conversation occurred after Mr. Eastham was retained to represent Plaintiff in this action (DN 42).  The telephone conversation came up during Ms. Polley's deposition (DN 42).  BIC asserts that Ms. Polley's deposition testimony reveals a "dishonest, if not fraudulent, attempt by Mr. Eastham" to join her as a defendant in an effort to defeat removal of this civil action, from the Green Circuit Court, on the basis of diversity jurisdiction (DN 42).  BIC concedes that the three-part test in <u>Nationwide Mut. Ins. Co.</u>, applies because Mr. Eastman represented Plaintiff at the time he had the telephone conversation with Ms. Polley (DN 42).  It argues all three parts of the test are satisfied because Mr. Eastman is the only one who can clarify what he said to Ms. Polley; the conversation was not privileged; and the conversation is crucial to BIC's preparation of the case as it addressed the condition and origin of the lighter (DN 42).  BIC asserts the conversation is not subject to the attorney-client privilege because Mr. Eastham does not represent Ms. Polley (DN 42).  Alternatively, BIC argues Ms. Polley waived any claim of privilege by testifying about the conversation (DN 42).  Finally, BIC argues the "potential fraud" implicated by Ms. Polley's testimony "uniquely justifies" deposing Mr. Eastham regarding this conversation (DN 42).

In his reply, Plaintiff makes a general representation that the Green County Attorney's office did not investigate the incident involving CAP and the cigarette lighter (DN 45). Plaintiff also makes a general representation that Mr. Eastham conducted an investigation but did so in his capacity as a private attorney, not the Green County Attorney, after being contacted by Ms. Cowles (DN 45). Relying on these general representations, Plaintiff argues there is no basis for BIC to depose Mr. Eastham about his investigation (DN 45).

In his reply, Plaintiff characterizes Mr. Eastham's telephone conversation with Ms. Polley as a witness interview conducted by Plaintiff's counsel (DN 45). Plaintiff asserts the first part of the three-part test in <u>Nationwide Mut. Ins. Co.</u>, cannot be satisfied because the information BIC seeks is available through Ms. Polley (DN 45). Plaintiff argues the second part of the test cannot be satisfied because the information BIC seeks is not relevant evidence within the meaning of FRE 401 (DN 45). Plaintiff seems to concede that the attorney-client privilege does not apply to the substance of this telephone conversation. However, Plaintiff argues if Mr. Eastham is compelled to testify about the interview then there is a significant risk that his counsel's mental impressions about both the case and Ms. Polley will be revealed to BIC (DN 45). Finally, Plaintiff asserts the third prong of the test cannot be satisfied because the information BIC seeks is not crucial to its defense (DN 45).

In its surreply, BIC relies on excerpts of deposition testimony from Greensburg Police Chief John Brady ("Police Chief Brady") to argue Mr. Eastham, in his capacity as the Green County Attorney, obtained information about the criminal investigation and received the BIC lighter allegedly involved in the incident (DN 49). BIC also relies on excerpts of deposition testimony from Ms. Cowles and CAP's biological father, Thor Polley ("Mr. Polley"), to argue Mr. Eastham, in his

capacity as the Green County Attorney, participated in the criminal investigation (DN 49).

In its surreply, BIC presents a new argument in support of its claimed need to question Mr. Eastham about his telephone conversation with Ms. Polley (DN 49). BIC acknowledges that Mr. Eastham was counsel to Plaintiff at the time the telephone conversation occurred (DN 49). Nevertheless, BIC argues it should be allowed to depose opposing counsel regarding this conversation in order to resolve a conflict regarding the evidence (DN 49). According to BIC, deposition testimony from Police Chief Brady and Fire Chief Lawrence Gupton ("Fire Chief Gupton") create a conflict regarding where the lighter was found, the chain of custody, and the identity of the lighter (DN 49). Further, BIC asserts that Police Chief Brady does not recall the circumstances under which he gave the lighter to Mr. Eastham (DN 49). BIC argues "Mr. Eastham is the only person who knows the circumstances under which he requested and received the lighter, and the only person who knows the identities of those who handled or had custody of the lighter while it was under his control" (DN 49 at Page 4). Further, BIC contends "[a]s the only known custodian of the lighter in this interim period, Mr. Eastham is the only person who can testify as to the changes in its condition, if any" (DN 49 at Page 4). Finally, BIC argues "Mr. Eastham is the only person who can clarify the troublesome implications of Ms. Polley's testimony concerning the alleged plot to attribute ownership of the lighter to her" (DN 49 at Page 4). BIC contends Mr. Eastham's conversation with Ms. Polley is absolutely relevant to the issues of ownership and custody and is vital to its defense because it suggests he attempted to obscure the ownership and/or chain of custody of the cigarette lighter (DN 49).

In response, Plaintiff asserts Police Chief Brady testified he could not recall whether he contacted Mr. Eastham or Mr. Eastham contacted him about disposition of the lighter and he

could not recall why the lighter was delivered to Mr. Eastham (DN 47).[2]  Additionally, Plaintiff

makes a general representation that Mr. Eastham conducted an investigation in his capacity as a

private attorney, not the Green County Attorney, after he was contacted by Ms. Cowles (DN 47).

The undersigned will first address BIC's desire to depose Mr. Eastman about the

substance of a telephone conversation he had with Ms. Polley.  The parties agree Mr. Eastman was

counsel to Plaintiff at the time the telephone conversation occurred.  Further, the parties agree that

the taking of opposing counsel's deposition depends on whether BIC has shown "'that (1) no other

means exist to obtain the information ...; (2) the information sought is relevant and nonprivileged;

and (3) the information is crucial to the preparation of the case.'"  Nationwide Mut. Ins. Co. v. Home

Ins. Co., 278 F.3d 621, 628 (6th Cir. 2002) (quoting Shelton v. Am. Motors Corp., 805 F.2d 1323,

1327 (8th Cir. 1986)).  Certainly, deposing Mr. Eastham may clarify what he said to Ms. Polley about

joining her as a defendant to frustrate an attempt to remove the action to federal court.  However,

this information is not "relevant to any party's claim or defense" in this action.  Fed.R.Civ.P.

26(b)(1).  Notably, in its response to the motion, BIC appears to concede this point by its silence

(DN 42 at Page 11).  Moreover, Mr. Eastham's testimony on this subject is not crucial to BIC's

preparation of the case because the case has been removed to this Court on the basis of diversity of

citizenship and there is no pending motion to return the action to the Green Circuit Court (DN 1).

Furthermore, if BIC believes that Ms Polley conveyed to Mr. Eastham relevant first-hand

information regarding the condition and origin of the lighter then BIC should have conducted a more

probing examination during her deposition.  If, on the other hand, BIC believes during the telephone

conversation Mr. Eastham provided to Ms. Polley relevant information about the condition and

_____

[2]These assertions are set forth in Plaintiff's response (DN 47) to BIC's motion for leave
to file a surreply (DN 46).

origin of the lighter then, again, BIC should have conducted a more probing examination of Ms.

Polley during her deposition.  Additionally, the undersigned notes there are probably other potential

sources for this information including the firefighters and/or police officers who first responded to

the scene and discovered the cigarette lighter.  These first responders provided the lighter to Fire

Chief Gupton who arrived later and he, in turn, provided the lighter to Police Chief Brady who

placed the lighter in a locked property room at the police station.  Put simply, BIC has failed

demonstrate that no other means exist to obtain information about the ownership of and the chain

of custody of the lighter.  Nationwide Mut. Ins. Co., 278 F.3d at 628.  Notably, the parties appear

to agree the information sought is not subject to the attorney-client privilege.  In short, BIC has not

made the requisite showing necessary to take the deposition of opposing counsel.  For this reason,

Plaintiff's motion to quash the subpoena will be granted as to deposing Mr. Eastham about his

telephone conversation with Ms. Polley.  In light of this conclusion, Plaintiff's motion for a

protective order is rendered moot.

The undersigned will now address BIC's desire to depose Mr. Eastham about a

criminal investigation it believes he performed, in his capacity as the County Attorney, in the weeks

following the December 17, 2004 incident.  Plaintiff concedes Mr. Eastham did perform some type

of investigation during this time frame but did so in his capacity as a private attorney following a

telephone conversation with Ms. Cowles, CAP's mother.  This dispute is far more complicated than

the one above for a number of reasons.  First, under Kentucky law, if Ms. Cowles' telephone

conversation with Mr. Eastham amounts to an initial consultation then she became a "client", under

the definition in KRE 503(a)(1), and the attorney-client privilege attached.[3]  Lovell v. Winchester,

[3]Since state law supplies the rule of decision as to the claims and defenses raised in this diversity case, state law applies to disputes regarding whether a matter is privileged.  FRE 501.

941 S.W.2d 466, 467-468 (Ky. 1997) (citing Green v. Montgomery County Alabama, 784 F.Supp. 841 (M.D. Ala. 1992) (attorney-client relationship deemed to exist based upon what was discussed during plaintiff's telephone conversation with the lawyer)).  Unfortunately, the record is not adequately developed to determine whether the telephone conversation that Ms. Cowles refers to in her deposition (DN 45, Exhibit 2) ripened into an attorney-client relationship.  Thus, the Court will require testimony from Ms. Cowles and Mr. Eastham regarding the substance of their telephone conversation.  Additionally, the Court needs testimony from Mr. Eastham about what capacity or capacities he was acting in when he conducted an investigation in the weeks following December 17, 2004.

The complaint in this action indicates in an order entered November 28, 2007, the Simpson District Court appointed Plaintiff as Conservator for CAP (DN 1 at Paragraph 1).  The complaint, dated January 8, 2008, identifies Mr. Eastham as co-counsel to the Plaintiff (DN 1).  Unfortunately, the record does not indicate when Mr. Eastham began representing Plaintiff or the circumstances that led to his representing Plaintiff.  This information may be relevant in determining whether the work-product doctrine applies to Mr. Eastham's investigation in the weeks following December 17, 2004.  For this reason, the Court will need testimony from Mr. Eastham and Plaintiff about their attorney-client relationship.

The undersigned concludes the most expedient and thorough way to develop the record regarding the above issues is to conduct an evidentiary hearing.  During the evidentiary hearing Ms. Cowles, Mr. Eastham, and Plaintiff will testify on the above identified subjects.  If a claim of privilege comes up during the evidentiary hearing the undersigned will adjourn the hearing

---

See, e.g., Jewell v. Holzer, 899 F.2d 1507, 1513 (6th Cir. 1990).

and conduct an *in camera* examination of the witness to develop the record.  The transcript of the

*in camera* examination will be filed under seal in the record.  At the close of the evidentiary hearing

the undersigned will discuss with counsel the need for post-hearing memoranda.  The undersigned's

courtroom deputy, Kelly Lovell will contact the parties to schedule the evidentiary hearing.

IT IS HEREBY ORDERED that Plaintiff's motion to quash subpoena is GRANTED

with respect to deposing Mr. Eastham about his telephone conversation with Ms. Polley.

IT IS FURTHER ORDERED that Plaintiff's motion for entry of a protective order

is DENIED as moot with respect to deposing Mr. Eastham about his telephone conversation with

Ms. Polley.

IT IS FURTHER ORDERED that the remainder of Plaintiff's motion to quash

subpoena and for entry of a protective order is STAYED pending further development of the record.

Copies:        Counsel of Record
               Kelly Lovell, Courtroom Clerk