# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:08-CV-00019**

**DAVID R. CUMMINS, conservator**                                                                      **PLAINTIFF**
**for C.A.P., a minor**

**v.**

**BIC USA, INC. and**                                                                                       **DEFENDANTS**
**BIC CONSUMER PRODUCTS**
**MANUFACTURING COMPANY, INC.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [DN 83] and a motion to exclude Plaintiff's liability experts [DN 104] by Defendant BIC USA, Inc. and Defendant BIC Consumer Products Manufacturing Company, Inc. (collectively "BIC"). Fully briefed, the matters are ripe for decision. For the reasons that follow, the motions are denied.

## I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. FACTUAL BACKGROUND

This case involves the tragic combination of a child and a cigarette lighter. On December 17, 2004, three-year-old C.A.P. was dropped off at his mother's apartment by his step-mother, and immediately went upstairs to his bedroom. A short while later, C.A.P.'s mother, Amy Cowles, heard him scream. She found him at the top of the stairs engulfed in flames from the waist up; he had, apparently, used a BIC Model J26 lighter to ignite his McKid's t-shirt. No one seems to know where the lighter came from, but the parties agree that the child-resistant guard (the metal band that a consumer must depress before rotating the spark wheel in order to generate a flame) had been removed. Plaintiff brought this products liability suit against BIC as the manufacturer of the lighter. BIC has moved for summary judgment.

## III. DISCUSSION

Kentucky courts have recognized two types of product defects relevant to the case at hand: (1) "design defects or unreasonable risks of harm inherent in the product's design"; and (2) "warning defects or unreasonable risks of harm that could have been reduced or avoided by the provision of reasonable instructions or warnings." Edwards v. Hop Sin, Inc., 140 S.W.3d 13, 15 (Ky. Ct. App.

2

2003). The United States Consumer Product Safety Commission requires that all cigarette lighters must be equipped with a child resistant mechanism which cannot "be easily overriden or deactivated." 16 C.F.R. § 1210.3(b)(4). Accordingly, Plaintiff has asserted a design defect and failure to warn products liability claim on the grounds that the BIC J26 lighter is unreasonably dangerous because the child safety feature can be easily deactivated, and had the child guard been in place, C.A.P. would have been unable to successfully operate the lighter. Defendants have moved for summary judgment arguing that: (1) Plaintiff failed to identify the product which caused the injury; (2) Plaintiff failed to articulate a reasonable, safer alternative design; and (3) Plaintiff cannot prove a product defect because his liability experts should be excluded. The Court will discuss each of Defendants' arguments in turn.

**A. Product Identification**

Defendants first argue that it is mere speculation that the black BIC J26 lighter found at the scene was the actual cause of C.A.P.'s injuries. It is the Plaintiff who bears the burden of establishing the legal cause of his injuries. Bailey v. N. Am. Refractories Co., 95 S.W.3d 868, 872 (Ky. Ct. App. 2001). "[L]egal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm." Id. (quotation omitted). In other words, Plaintiff must "'indicate the probable, as distinguished from a possible cause.'" Id. at 872-873 (quoting Briner v. Gen. Motors Corp., Ky., 461 S.W.2d 99, 101 (1970). "Generally, the existence of legal cause is a question of fact for the jury. It only becomes a question of law for the Court where the facts are undisputed and are susceptible of but one inference." Johnson v. Triangle Insulation, 2003 WL 21769867, at *2 (Ky. Ct. App. Aug. 1, 2003).

In the case at hand, C.A.P. testified to the fact that he ignited the lighter by pressing a red

button. The BIC J26 lighter has such a distinctive red button. C.A.P. also testified that following ignition of the fire, he threw the lighter on the ground in the upstairs hallway. A firefighter at the scene was nearly certain that he observed a "dark colored" lighter at the top of the steps near the burn area shortly after the incident. Furthermore, Chief Brady recorded in his official report that he was given the black BIC J26 lighter by a firefighter who said that he had recovered it at the top of the stairs near the scene of the accident. The lighter at issue here is black and had its child safety deactivated. These facts would allow a jury to reasonably conclude that the BIC J26 lighter was the cause of C.A.P.'s injuries.

**B. Reasonably Feasible, Safer Alternative Product Design**

Defendants allege that the BIC J26 design is not defective because Plaintiff failed to put forth evidence of an alternative design that would have prevented C.A.P.'s injuries. A product may be considered defective if it was made "according to an unreasonably dangerous design." Jones v. Hutchinson Mfg., Inc., 502 S.W.2d 66, 69 (Ky. 1973). "The maker is not required to design the best possible product or one as good as others make or a better product than the one he has, so long as it is reasonably safe." Sturm, Ruger & Co. v. Bloyd, 586 S.W.2d 19, 21-22 (Ky. 1979). Thus, in a product liability case such as this, "the question is whether the product creates such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 780 (Ky. 1984) (quotation omitted). Both parties agree that in Kentucky, in order to prove a product is "unreasonably dangerous" as designed, a plaintiff is required to produce competent evidence "of a feasible alternative design" that would have prevented the injury. Toyota Motor Corp. v. Gregory, 136 S.W.3d 35, 42 (Ky. 2004).

4

Plaintiff first asserts that evidence of an alternate design is not required in this case because Defendants violated a federal statute and therefore negligence per se applies. Defendants claim that Kentucky does not extend the negligence per se doctrine to violations of federal law. The Court agrees with Defendants on this point.

Negligence per se "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." Real Estate Mktg., Inc. v. Franz, 885 S.W.2d 921, 926-27 (Ky. 1994) (quotation omitted). "[It] provides an avenue by which a damaged party may sue for a violation of a statutory standard of care if the statute in question provides no inclusive civil remedy and if the party is within the class of persons the statute is intended to protect." Young v. Carran, 289 S.W.3d 586, 589 (Ky. Ct. App. 2008) (citing Hargis v. Baize, 168 S.W.3d 36, 40 (Ky. 2005)). Kentucky codified the common-law doctrine of negligence per se in K.R.S. § 466.070. It provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." K.R.S. § 466.070.

Plaintiff's negligence per se theory rests in the allegation that Defendants failed to comply with 16 C.F.R. § 1210 which requires that all lighters be equipped with a child safety mechanism which can not be easily overridden or deactivated. Plaintiff relies on the Restatement (Third) of Torts § 4 which provides that "a product's noncompliance with an applicable safety statute or administrative regulation renders the product defective with respect to the risks sought to be reduced by the statute or regulation." Plaintiff also argues that the comments further indicate that "when a product design is in violation of a safety statute or regulation, there is no necessity to prove an alternative design in order to establish [a] defect." Restatement (Third) of Torts § 4 cmt. b.

However, Plaintiff cannot rely on the negligence per se doctrine here because "Kentucky courts have held that the 'any statute' language in KRS 446.070 is limited to Kentucky statutes and does not extend to federal statutes and regulations or local ordinances." Young, 289 S.W.3d at 589 (citing T & M Jewelry, Inc. v. Hicks ex rel. Hicks, 189 S.W.3d 526, 530 (Ky. 2006). This is because "[t]he General Assembly did not intend it 'to embrace the whole of federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations.'" Young, 289 S.W.3d at 589 (quoting T & M Jewelry, 189 S.W.3d at 530)). See Alderman v. Bradley, 957 S.W.2d 264, 266 (Ky. Ct. App. 1997) ("The appellee counters that this statute[, K.R.S. 466.070,] applies only to laws enacted by Kentucky's General Assembly. We agree that its reach is limited to violations of Kentucky statutes and does not extend to federal regulations. . . . The legislature did not expressly include federal laws within the purview of KRS 446.070, and . . . "statute" as utilized in Chapter 446, et. seq., refers to those laws enacted by [Kentucky's] General Assembly. . . . When read in its entirety, Chapter 446 clearly demonstrates the legislature's intention and attempt to establish rules for construing, interpreting and applying the statutes enacted by it-the supreme law-making body of [Kentucky]."). Accordingly, the Court finds that negligence per se is inapplicable and Plaintiff must put forth evidence of a reasonable, alternative design.

Plaintiff claims that one his experts, Dr. Tarald Kvalseth, nevertheless offered evidence of alternative, feasible designs that if employed, would have prevented C.A.P.'s injuries. Defendants contend that Plaintiff failed to identify any alternative designs with specificity. The Court disagrees. Dr. Kvalseth's report reveals three potential alternatives including: (1) A design utilized by BIC from 1995-2000 for its J26 cigarette lighters where the child resistant feature is an integral part of the metal hood; (2) a design utilized by BIC competitors which incorporates separate, free-wheeling

6

components adjacent to the spark wheel; and (3) a design used in the current BIC model J26 design, except that the separate metal guard or spring is virtually flush with the spark wheel. All three of these alternative designs are specifically referenced in Kvalseth's report.

This is not to say, however, that the alternative designs are in fact safer and would have prevented C.A.P.'s injuries. "[I]n establishing that the design in question was defective, the plaintiff must offer proof of an alternative safer design, practicable under the circumstances. . . . Second, the plaintiff must offer proof of what injuries, if any, would have resulted had the alternative, safer design been used." McCoy v. Gen. Motors Corp., 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998) (quotation omitted). In Kentucky, "[p]roof of nothing more than a particular injury would not have occurred had the product which caused the injury been designed differently is not sufficient to establish a breach of the manufacturer's or seller's duty as to design of the product." Hutchinson Mfg., Inc., 502 S.W.2d at 70-71 (quotation omitted). "'Expert testimony is probably necessary to show the feasibility of an alternative design which would allegedly have prevented an accident; once a feasible alternative design is shown, however, it is for the jury to decide whether the product is unreasonably dangerous.'" Stevens v. Keller Ladders, 1 F. App'x 452, 458 (6th Cir. 2001) (quoting 4A American Law of Products Liability § 54:81 (3d ed. 1997). Therefore, Plaintiff must show that the child safety function of the alternative designs would probably not have been disengaged under these facts. "Without any evidence on this issue, the jury would be left to mere conjecture and speculation as to whether the plaintiff's injuries were [caused] by the alleged defect in the [lighter][,]" and whether C.A.P.'s injuries would have been prevented by an alternative design. McCoy, 47 F. Supp. 2d at 841.

Plaintiffs allege that the J26 child safety is easily pried from the lighter making it

unreasonably dangerous. In comparison to the J26, Plaintiff argues that the alternate designs are equipped with safety devices which require more force to remove, have less space between the spark wheel and the safety, and damage the lighter if removed. In sum, Plaintiff claims that the alternate designs have safety devices which were less likely to have been removed and therefore it is probable that C.A.P. would not have been able to operate the lighter. Thus, it is conceivable that an alternate design would have prevented C.A.P.'s injuries and that the BIC J26 is unreasonably dangerous due to its easily deactivated safety device. See Keller Ladders, 1 F. App'x 452 at 460 n.6 ("Since the alternative design rung locks with visible tips would have made it possible to determine visually that the ladder was securely locked before climbing it, the jury would be justified in finding that it was probable that the alternative design would have prevented the accident."). These alternate designs were known and available to BIC at the time the BIC J26 was designed. Accordingly, Plaintiff has established a genuine issue of material fact as to whether an alternate design would have prevented C.A.P.'s injuries.

### C. Daubert Motions Challenging Plaintiff's Liability Experts

Although federal regulation requires that all lighters be equipped with a safety device which can be not be "easily overridden or deactivated," that standard is not defined by 16 C.F.R. 1210.3(b)(4). However, Plaintiff's experts, Tarald O. Kvalseth, Mark B. Hood, and Kent B. Godsted, have offered testimony that the BIC J26's child safety feature is easily deactivated, and thus defective, because of the inviting gap between the guard and spark wheel and the minimal force required to remove its child safety feature in comparison to alternative designs. Defendants have moved to exclude the testimony under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Fed. R. Evid. 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether certain testimony is reliable, the focus of the Court "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. In Daubert, the Supreme Court identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion including: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592-94. This gatekeeping role is not limited only to expert testimony based upon scientific knowledge, but, instead, extends to "all 'scientific,' 'technical,' or 'other specialized' matters within" the scope of Rule 702. Kumho Tire, 526 U.S. at 147-48. Whether the Court applies the Daubert factors to assess the reliability of the testimony of an expert witness "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (quotation omitted). Of course, Daubert is a flexible test and no single factor, even testing, is dispositive. See Kumho Tire, 526 U.S. at 151-52; Smith, 215 F.3d at 719. After examining the Daubert guideposts used to determine reliability, the Court finds that Plaintiff's experts have put forth reliable testimony that will assist the trier of fact in determining whether the

BIC J26 was defective.

### 1. Dr. Tarald Kvalseth

Turning first to Kvalseth's qualifications, the Court finds Kvalseth is an appropriately qualified engineer to provide expert testimony. Dr. Kvalseth has served as a professor of mechanical engineering, industrial engineering, and biomedical engineering for over twenty years and has a degree in industrial engineering. He has been employed by lighter manufacturers to specifically evaluate the exact issue here - child resistant safety mechanisms. Kvalseth, having patented his own disposable lighter with a child safety feature, also provided consultation and testimony for the United States Consumer Product Safety Commission and the Justice Department in relation to litigation initiated against retailers of lighters which had the child safety feature removed. Rule 702 does not require that Kvalseth be a licensed engineer in order to testify as an expert; his background is more than sufficient to qualify him in the field of lighter design safety.

Defendants also challenge Kvalseth's testimony because he only viewed the lighter at issue in photographs and removed the child resistant feature on a similar J26, but not on the alternate lighters he suggested. However, Defendants' disagreement with the manner in which Kvalseth conducted his research are matters that can be adequately addressed at trial because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

Defendants next challenge the offered testimony because Dr. Kvalseth failed to present an objective, articulable standard to determine the relative ease with which a child guard can be removed. Defendants claim that Kvalseth simply categorized the lighters into one of two groups,

easily deactivated and not easily deactivated, without articulating the force required to qualify a lighter into either category. However, Kvalseth's techniques were objective and articulable. His review of alternate lighters required him to inspect the space between the metal guard and the spark wheel, whether the head of the lighter was made of one piece or two, and whether damage would occur to the lighter if the child safety mechanism was overridden. Using these factors, Kvalseth was able to develop an opinion as to which designs were more easily deactivated compared to others. Dr. Kvalseth's experience in lighter safety and inspection of the lighters at issue here will allow him to provide testimony as to how a particular model lighter might have its child safety mechanism removed and to offer an accompanying opinion as to which particular child protection designs are easily disengaged.

Defendants next allege that Dr. Kvalseth failed to test the alternative designs and therefore his testimony should be excluded. However, an alternative design that has been widely used in another product can be presumed to have been tested. Whitten v. Michelin Ams. Research & Dev. Corp., 2008 WL 2943391, at *7 (W.D. Tenn. July 25, 2008). See MacCleery v. Royce Union Bicycle, Inc., 1996 WL 442707, at *4 (D.N.H. June 11, 1996) ("[A] design which is in current commercial use is presumptively effective and, as such, cannot be dismissed as an untested and novel theory simply because the expert did not also identify a testing procedure which validates the effectiveness."). Here, one of Kvalseth's proposed designs was in use by BIC from 1995 to 2000 and the two others were being employed by BIC competitors. "It can, therefore, be assumed that the design is effective, tested, and safe." Whitten, 2008 WL 2943391 at *7. Therefore, Dr. Kvalseth's expert testimony is admissible.

### 2. Mark Hood

Defendants first challenge Hood's testimony because he allegedly lacks experience in lighter child safety mechanisms in order to provide reliable testimony. The Court disagrees. Hood is a licensed engineer and has focused much of his career in non-destructive testing, failure analysis, and engineering investigations of failed and accident related components. The fact that Hood has not previously worked with disposable lighters and child safety functions is not dispositive of his ability to act as an expert in this case. To require Hood to have experience in such a narrow field is not what is required by Rule 702; his background need only be significant enough to provide reliable testimony that will assist the trier of fact. The Court finds that to be the case here.

The record also reflects the fact that Hood performed extensive testing on the BIC J26 lighter in preparation for this case including visual, x-ray, and laboratory analysis as well as chemical and hardness testing of the child guard to determine its material composition. Hood also conducted force tests on both the BIC J26 lighter one-piece and two-piece designs to determine the amount of effort required to remove the child safety feature from each.[1] Although Hood did not test the remaining designs, it appears his testimony will only relate to comparing BIC's previous one-piece design to the J26's two-piece design. Regardless, these complaints can be easily fleshed out through cross examination.

### 3. Kent Godsted

Godsted's background is similar to Plaintiff's other liability experts. He is a certified

---

[1] Defendants argue that Hood's "Force Evaluations for Common Tasks," where Hood compared the force required to remove the child safety feature from the BIC J26 as similar to opening a can of tuna or soda, would confuse the jury and is irrelevant because removal of a lighter's safety device requires a tool where the latter does not. However, opening a can of soda or tuna does require a tool - the can comes equipped with a lever mechanism attached to the can. This is similar to the lever system that would be used to remove a safety device from a lighter and the Court does not find this comparison to be misleading or irrelevant.

engineer in Kentucky, performs consulting work as an engineer, and has a Masters Degree in engineering from the Illinois Institute of Technology. He has spent most of his career in a manufacturer setting and worked extensively in plastic molding and metal forming. Furthermore, he has previously testified in a Consumer Product Safety Commission regulation case involving the safety standards required of folding tables and has served as an expert in other personal injury and product defect cases. Although Godsted lacks specific experience in the lighter industry, a lighter is not comprised of an overly sophisticated design and his engineering background is sufficient to qualify him to testify in this case.

Godsted, like Hood, will only be providing limited testimony comparing BIC's one-piece lighter design to the two-piece design, so the fact that he failed to test the remaining alternate designs is of little importance. Godsted, in conjunction with Hood's force testing, also tested the relative force required to remove the hood of the BIC one-piece design and compared that to the force required to remove the child protection system on the two-piece design.[2] This testimony will certainly be relevant to determine whether BIC's previous design was more effective at preventing deactivation of the child guard compared to the J26 design, and, accordingly, whether the J26 child guard was defective. Accordingly, Godsted's testimony will be allowed.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment [DN 83] by Defendant BIC USA, Inc. and Defendant BIC Consumer Products

---

[2] It is of no consequence that Godsted failed to "sheer test" BIC's two-piece design as Plaintiff has only argued that the J26 is defective because the child guard is easily pried off, not that it is easily sheered off.

13

Manufacturing Company, Inc. is **DENIED**. Defendants' motion to exclude the testimony of Plaintiff's liability expert witnesses [DN 104], Tarald O. Kvalseth, Mark B. Hood, and Kent B. Godsted, is also **DENIED**.

**Joseph H. McKinley, Jr., Judge**
**United States District Court**

April 12, 2011

cc: Counsel of Record