**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CIVIL ACTION NO. 1:08-CV-00019**

**DAVID R. CUMMINS, conservator**                                    **PLAINTIFF**
**for C.A.P., a minor**

**v.**

**BIC USA, INC. and**                                                **DEFENDANTS**
**BIC CONSUMER PRODUCTS**
**MANUFACTURING COMPANY, INC.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Plaintiff to exclude or limit the testimony of

Defendants' expert witnesses [DN 99] and a motion by Defendant BIC USA, Inc. and Defendant

BIC Consumer Products Manufacturing Company, Inc. (collectively "BIC") to exclude Plaintiff's

expert Crystal Zemenski [DN 102]. Fully briefed, the matters are ripe for decision.

**I. FACTUAL BACKGROUND**

This case involves the tragic combination of a child and a cigarette lighter. On December

17, 2004, three-year-old C.A.P. was dropped off at his mother's apartment by his step-mother, and

immediately went upstairs to his bedroom. A short while later, C.A.P.'s mother, Amy Cowles, heard

him scream. She found him at the top of the stairs engulfed in flames from the waist up; he had,

apparently, used a BIC Model J-26 lighter to ignite his McKid's t-shirt. No one seems to know

where the lighter came from, but the parties agree that the child-resistant guard (the metal band that

a consumer must depress before rotating the spark wheel in order to generate a flame) had been

removed. Plaintiff brought this products liability suit against BIC as the manufacturer of the lighter.

## II.  STANDARD OF REVIEW

Both Plaintiff and Defendants have moved to exclude expert testimony under <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993) and Fed. R. Evid. 702.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant.  <u>Mike's Train House, Inc. v. Lionel, L.L.C.</u>, 472 F.3d 398, 407 (6th Cir. 2006) (citing <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999)).  In determining whether certain testimony is reliable, the focus of the Court "must be solely on principles and methodology, not on the conclusions that they generate."  <u>Daubert</u>, 509 U.S. at 595.  In <u>Daubert</u>, the Supreme Court identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion including:  (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."  <u>Id.</u> at 592-94.  This gatekeeping role is not limited only to expert testimony based upon scientific knowledge, but, instead, extends to "all 'scientific,' 'technical,' or 'other specialized' matters within" the scope of Rule 702.  <u>Kumho Tire</u>, 526 U.S. at 147-48.  Whether the Court applies the <u>Daubert</u> factors to assess the reliability of the testimony of an expert witness "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  <u>Id.</u> at 150 (quotation omitted).  Of course, <u>Daubert</u> is a flexible

test and no single factor is dispositive.  See Kumho Tire, 526 U.S. at 151-52; Smith, 215 F.3d at 719.

## III.  DISCUSSION

Plaintiff contends that the BIC J-26 lighter at issue was defective because it was not manufactured in accordance with 16 C.F.R. § 1210.3(b)(4) which requires that a lighter be equipped with a child safety device that cannot "be easily overridden or deactivated."  Both parties agree that "easily deactivated or overridden" is not defined by the regulations.  Therefore, Defendants have listed several experts who are prepared to offer testimony that the BIC J-26's child safety mechanism was not easily overridden or deactivated.  In response, Plaintiff has moved for exclusion of Defendants' experts on various grounds.  Similarly, Defendants seek exclusion of Plaintiff's expert Crystal Zemenski who has offered testimony as to the value of C.A.P.'s medical bills.  The Court will discuss the admissibility of each expert in turn.

### A.  Defendants' Experts Roy Deppa and Nicholas Marchica

Both Deppa and Marchica are former employees of the Consumer Product Safety Commission ("CPSC") who are prepared to testify that:  (1) the "easily deactivated or overridden" language of 16 C.F.R. § 1210.3(b)(4) refers not to adults, but to children under the age of five; and (2) the BIC J-26 is not defective because the CPSC has not taken any investigative or corrective action against the child resistant feature.  Plaintiff claims that both opinions are inappropriate expert testimony.

Turning first to Deppa's and Marchica's testimony that the language "easily deactivated or overridden" of § 1210.3(b)(4) refers to actions of children under the age of five rather than adults, Plaintiff argues that experts can not testify as to interpretations of law.  The Court agrees.  "The interpretation of federal regulations is a matter of law for the court to decide."  CSX Transp., Inc.

v. City of Plymouth, 92 F. Supp. 2d 643, 656 (E.D. Mich. 2000) (citing Bammerlin v. Navistar Int'l Transp. Corp., 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court.")). See Nemir v. Mitsubishi Motors Corp., 2006 WL 322476, at *1 (E.D. Mich. Feb. 10, 2006) ("[I]nterpretation of federal regulations presents a question of law for the Court; not a question of interpretation for experts or a question of fact to be resolved by the jury."). Therefore, opining that § 1210.3(b)(4) was not intended to apply to adults would be inappropriate because "[i]t is the function of the trial judge to determine the law of the case [and] [i]t is impermissible to delegate that function to a jury through the submission of testimony on controlling legal principles." U.S. v. Zipkin, 729 F.2d 384, 387 (6th Cir. 1984) (citing Stoler v. Penn Cent. Transp., 583 F.2d 896 (6th Cir. 1978) (expert witness prohibited from testifying because testimony would have amounted to a legal opinion)).

The Court finds that the language of 16 C.F.R. § 1210.3(b)(4), which requires the child resistant safety mechanism to "not be easily overridden or deactivated" refers not only to the efforts of children under the age of five, but also to the efforts of anyone. Deppa's and Marchica's deposition testimony regarding their interpretation of § 1210.3(b)(4) is neither supported by the plain language of the regulation or their expert report. One of the concerns noted in their report was CPSC's knowledge that some adults would intentionally remove the safety device if they could do so. Another realization was that any determined adult, using enough force, could disengage the safety no matter the design. Thus, while acknowledging the difficulty of defining the terms, the CPSC chose to write the regulation to require that the mechanism not be easily deactivated or overridden.

Given the known concerns of adults removing safety devices, it makes little sense to believe that the CPSC would only direct its regulation at the efforts of children under the age of five. Under the Defendant's expert's interpretation, a lighter would be in compliance with the regulation even though its safety feature could be easily deactivated by anyone over five years of age, as long as those under five years old found it somewhat difficult. The idea behind the regulation is that lighters have a safety feature in place at all times. Manufacturing a lighter with a safety device which could be easily deactivated by anyone over the age of five does not achieve the purpose of the regulation. Therefore, the Court is of the opinion that the regulation requires a lighter to possess a child resistant safety feature which is not easily deactivated or overridden by anyone, regardless of age.

As to the evidence concerning the CPSC's failure to take any investigative or corrective action against the BIC J-26, Plaintiff seeks exclusion pursuant to 15 U.S.C. § 2074(b) which provides: "The failure of the Commission to take any action or commence a proceeding with respect to the safety of a consumer product shall not be admissible in evidence in litigation at common law or under State statutory law relating to such consumer product." The Court in Morales v. American Honda Motor Co. stated that "the most reasonable reading of . . . section [2074(b)] leads to a conclusion that Congress sought to exclude those instances where the CPSC had *completely* failed to act, as opposed to those instances where the CPSC engaged in activity that ultimately led to a decision not to regulate." 151 F.3d at 513 (6th Cir. 1998) (quotation omitted). Here, however, the CPSC has not completely failed to act, but has in fact examined and tested samples of the BIC J-26 in an effort to enforce their regulations. This included taking force measurements of the striker wheel, child safety mechanism, and the gas lever. (See DN 99, Ex. 3 - Deppa & Marchica Expert Report, ¶¶ 71- 90.) Based on their analyses, the CPSC concluded that the BIC J-26 complied with

5

§ 1210(3) and never initiated an investigative action or a recall.  Id.  Although not conclusive, this evidence will be relevant in determining whether the BIC J-26 was defective.  See Morales, 151 F.3d at 513 ([T]he legislative history behind  . . . section [2074(a)][1] confirms that it was expected that such compliance would be admitted as evidence, but would not be determinative of the outcome.")  (quotation omitted).  Accordingly, Deppa's and Marchica's testimony is not barred by § 2074(b).

**B.  Defendants' Expert Sandra Metzler**

Metzler seeks to testify that the J-26 is not easily overridden or deactivated based upon her four-factor test and by comparing the lighter's safeguard to other child safety products such as electrical outlet covers.  Plaintiff contends that this testimony would amount to an improper legal conclusion and the comparison is too dissimilar to support her opinion.  The Court disagrees.

Unlike the testimony of Deppa and Marchica, Metzler's testimony will not result in an improper legal conclusion.  Pursuant to Fed. R. Evid. 704(a), "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Although Metzler will be providing her expert opinion as to what constitutes easily removable, it will nevertheless be for the jury to decide whether the lighter's safety was easily removable - a question of fact.  Thus both parties will be permitted to put on expert testimony as to the ultimate issue in this case - whether the BIC J-26 child safety device is "easily overridden or deactivated."  This would include comparing the lighter's child safety device to other products that the jury may be familiar with such as toilet seat locks, electrical outlet covers, etc. to assist the jury in determining whether the BIC J-26 complies with federal safety regulations.

---

[1]      15 U.S.C. § 2074(a) provides: "Compliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person."

Accordingly, Metzler's testimony will be allowed.

### C. Defendants' Expert Christine Wood

Wood is also a human factors expert who is prepared to testify that the J-26 safety device is not easily deactivated or removed and that the accident could have been prevented had C.A.P.'s mother limited her child's access to lighters. Plaintiff argues that Wood's testimony would be improper. For the same reasons that Metzler's testimony is admissible in regards to her opinion that the BIC J-26 safety device is not easily overridden or deactivated, so too is Wood's expert opinion.

As to her opinions related to parental supervision, the Plaintiff argues that they are not relevant since the jury will not be apportioning fault to the mother. However, Defendants cite DeStock No. 14, Inc. v. Logsdon for the proposition that "'once causation is found the trier of fact must determine and apportion the relative degrees of fault of all parties and *nonparties*.'" 993 S.W.2d 952, 958 (Ky. 1999) (emphasis added) (quoting Zuern *ex rel.* Zuern v. Ford Motor Co., 937 P.2d 676, 682 (Ariz. Ct. App. 1996)).[2] As an initial matter, the Destock case was concerned with the interpretation of K.R.S. § 413.241, Kentucky's Dram Shop Act, which is separate and distinct from Kentucky's comparative fault statute, K.R.S. § 411.182. Destock did not apply § 411.182 because the court concluded that § 413.241 controlled the outcome of the case. Furthermore, the parties never sought to introduce the fault of a "non-party." Rather, the issue was whether a settling party's fault should be considered under § 411.182 or § 413.241. Therefore, the Destock court was never forced to consider whether the fault of a true non-party was admissible. Lastly, the language cited by Defendants is quoted from Arizona's comparative negligence statute, A.R.S. § 12-2506(c),

---

[2]     The Court notes that in the 12 years since the Destock decision, no court has cited this case for the proposition advanced by Defendants.

which states in relevant part: "The relative degree of fault of the claimant, and the relative degrees of fault of all defendants and *nonparties*, shall be determined and apportioned as a whole at one time by the trier of fact." (Emphasis added). However, Kentucky's comparative negligence statute does not include explicit language allowing a jury to apportion fault to a non-party. Thus, the <u>Destock</u> decision is not persuasive.

It is well-settled that Kentucky's "comparative negligence statute . . . preclude[s] the adjudication of liability of persons or legal entities who are neither before the court nor are settling tort-feasors." <u>Copass v. Monroe Cnty. Med. Found., Inc.</u>, 900 S.W.2d 617, 620 (Ky. Ct. App. 1995). C.A.P.'s mother does not fall within either category. The court in <u>Baker v. Webb</u>, 883 S.W.2d 898 (Ky. Ct. App. 1994), made clear that the trial court's decision to instruct the jury on the duties of a non-party was error. The <u>Baker</u> court reasoned:

> [T]he thrust of KRS 411.182, considered in its entirety, limits allocation of fault to those who actively assert claims, offensively or defensively, as parties in the litigation or who have settled by release or agreement. When the statute states that the trier-of-fact shall consider the conduct of "each party at fault," such phrase means those parties complying with the statute as named parties to the litigation and those who have settled prior to litigation, not the world at large.

<u>Id.</u> at 619-620. <u>See</u> <u>Bass v. Williams</u>, 839 S.W.2d 559, 564 (Ky. Ct. App. 1992) (appellate court finding error with trial court's decision to instruct the jury as to the duties of a non-party because "KRS 411.182 applies to persons named as parties, regardless of how named, and those persons who bought their peace from the litigation by way of releases or agreements"), *overruled in part on other grounds by* <u>Regenstreif v. Phelps</u>, 142 S.W.3d 1 (Ky. 2004). Because C.A.P.'s mother is not a party to this lawsuit, the jury will not be asked to apportion damages.

Even though the jury will not be asked to apportion damages in this case, evidence that the child was alone and the amount of time he was alone is admissible as it relates to the chain of custody issue and to whether the safety feature is easily deactivated or overridden. However, under Fed. R. Evid. 702, expert testimony is admissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony may assist the jury in understanding whether the safety issue is easily deactivated but it will not assist the jury in understanding the fact that C.A.P. was not supervised at the time of the incident. Accordingly, Christine Woods opinions related to parental supervision are excluded.

.

**D. Plaintiff's Expert Crystal Zemenski**

Zemenski is a medical auditor who has been tasked by Plaintiff to assign a value to the medical services C.A.P. received at Shriners Hospital. Defendants first claim that Zemenski's testimony should be excluded as unreliable. Despite Defendants' contentions, Zemenski does have sufficient experience in order to create a hospital bill from medical records. While employed as a hospital bill auditor for five years, she has familiarized herself with hospital charging practices. This will allow Zemenski to provide reliable testimony as to what C.A.P.'s hospital bill would have been based upon his medical records.

Defendants also contend that Zemenski's use of various Charge Description Masters ("CDM"), a published manual outlining a hospital's pricing for a specific medical procedure, was inappropriate. Defendants argue that Zemenski's testimony would be unreliable because Shriners provides its services free of charge and therefore do not use a CDM. However, referencing the CDM of several comparable hospitals would be the most practical and reliable way of deducing Shriners' potential pricing scheme. Defendants' disagreement with the

9

"science" of medical auditing and Zemenski's use of comparable CDM's can be adequately addressed at trial because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

Lastly, Defendants argue that Zemenski's testimony is irrelevant because Shriners provided its services to C.A.P. free of charge and therefore medical damages are not recoverable. The Court agrees that medical damages cannot be awarded here. Although Plaintiff does not seek compensation for medical damages, the value is nevertheless relevant for computing damages related to pain and suffering. In Thomas v. Greenview Hospital, Inc., the court stated that medical bills that had been written off are nevertheless entitled to be presented to the jury because "reducing the medical expense evidence by the amount written-off by [the hospital] would have unfairly prejudiced [plaintiff's] claim for pain and suffering by affecting the perception of the extent of treatment accorded [patient], and necessarily the potential for pain and suffering." 127 S.W.3d 663, 675 (Ky. Ct. App. 2004), *overruled in part on other grounds by* Lanham v. Commonwealth, 171 S.W.3d 14 (Ky. 2005). See Rideout v. Nguyen, 2008 WL 3850390, at *1 (W.D. Ky. Aug. 15, 2008) (same). Accordingly, Defendants' motion to exclude the expert testimony of Zemenski is denied.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's motion to exclude or limit the testimony of Defendants' expert witnesses [DN 99] is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to the testimony of Deppa and Marchica stating that 16 C.F.R. § 1210.3(b)(4) applies only to children under the age of five and it is **DENIED** as to their

testimony stating that the CPSC has not taken any investigatory or corrective action against BIC. It is further **GRANTED** as to Wood's opinions related to parental supervision. It is **DENIED** as to Metzler's and Wood's testimony concerning their interpretation of "easily removable" under 16 C.F.R. § 1210.3(b)(4). It is further ordered that the motion by Defendants to exclude Plaintiff's expert Crystal Zemenski [DN 102] is **DENIED**.

cc. Counsel of Record